# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung cellular phone, Model number: SM-J327T1<br>IMEI: 354256/09/588248/6 | )<br>)<br>) Case No. **19MJ2177**<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-1, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 & 960, 963 | Possession with intent to Distribute a Controlled Substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michael Hensley, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/24/19

*Judge's signature*

City and state: San Diego, California        Hon. Linda Lopez, United States Magistrate Judge
*Printed name and title*

I, Michael Hensley, Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device (hereinafter the **"Target Device #1"[1]**), as further described in Attachment A-1, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as more particularly described in Attachment B-1:

> Samsung cellular phone
> Model number: SM-J327T1
> IMEI: 354256/09/588248/6

This search supports an investigation and prosecution of Henry QUEZADA-Montero for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. On April 19, 2019 I was notified by Customs and Border Protection (CBP) Officers, of the arrest of QUEZADA-MONTERO at the San Ysidro, California Port of Entry on or about April 19, 2019 at approximately 5:24 a.m. I was informed that QUEZADA-MONTERO was the driver of a white Chevrolet Malibu, which contained, a total of eight (8) packages of methamphetamine with a net weight of 4.82 kilograms.

3. When I reported to the San Ysidro, Port of Entry, I recovered **Target Device #1** from a property bin assigned to QUEZADA-MONTERO. **Target**

---

[1] See separate cover for an application for a search warrant regarding Target Device #2.

**Device #1** was placed in the property bin of QUEZADA-MONTERO with other personal property belonging to him, including Target Device #2 and keys to the Chevrolet Malibu. I showed **Target Device #1** to QUEZADA-MONTERO who confirmed that the phone was his. I further discussed Target Device #2, originally found in the same property bin as **Target Device #1**. QUEZADA-MONTERO confirmed his ownership of Target Device #2.

4. I believe that the **Target Device #1** was used by QUEZADA-MONTERO to communicate with co-conspirators during the drug smuggling event. Defendant has been charged with importation of a controlled substance (methamphetamine) in the Southern District of California. Probable cause exists to believe that the **Target Device #1** contains evidence relating to violations of Title 21, United States Code Sections 952, 960 and 963. **Target Device #1** is currently in HSI possession located at 185 West F street San Diego, California 92101.

5. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Device #1** and seize the items set forth in Attachment B-1 (incorporated herein), which I believe will be found in the item to be searched as described in Attachment A-1 (incorporated herein).

6. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth

each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

7. I am a Special Agent employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been so employed since December 11, 2016. I am currently assigned to the ICE/ HSI San Diego Office.

8. I have completed approximately 24 weeks of intensive training in criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia (09/01/2017). As a result of my training and experience as a Special Agent, I am familiar with federal criminal statues to include violations of Titles 18, 19, 21, and 8 of the United States Code.

9. Prior to being a HSI Special Agent, I was an Immigration Officer under the Fraud Detection and National Security division of the United States Citizenship and Immigration Services. I also have over six (6) years of law enforcement experience as a United States Border Patrol Agent. As a Border Patrol Agent, I was assigned to conduct administrative and criminal investigations to identify potential threats towards national security and public safety. I conducted undercover operations in a plain clothes capacity investigating human and narcotic smuggling trends for over two years.

10. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code. I have participated in and conducted investigations of violations of various Federal

criminal laws, specifically including those related to narcotics violations. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics and the collection of money proceeds of narcotics trafficking. I regularly conduct investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§ 952, 960 and 963. My training also included how cellular and digital telephones and other electronic devices are used by narcotics smugglers in the normal course of their illicit activities.

11. In preparing this affidavit, I have also conferred with other agents and law enforcement personnel who are experienced in smuggling and importation of controlled substances, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in importation of controlled substances, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c.    Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d.    Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    e.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    f.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

13.    Subscriber Identity Module (SIM) Cards are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

14.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards,

deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yield evidence:

    a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

    c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

    d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS ESTABLISHING PROBABLE CAUSE

15. On April 19, 2019, at approximately 5:24 a.m., Henry QUEZADA-Montero made entry into the United States from Tijuana, Baja California, Mexico through the San Ysidro, California Port of Entry. QUEZADA-Montero was the driver of a 2008 white Chevrolet Malibu bearing California license plate 6JLR644. QUEZADA-Montero was applying for entry in vehicle lane twenty-three (23) in possession of a California State Driver's License (D1566578) and a Birth Certificate. QUEZADA-Montero was traveling with two minor children: S.V and V.V.

16. During pre-primary inspection, CBP Officer Lemuel Boswell was conducting roving operations with his assigned Narcotics and Human Detection Dog "Kimi" (#160472). CBP Officer Boswell received a positive alert on the front area of the 2008 Chevrolet Malibu. CBP Officer Boswell instructed QUEZADA-Montero to place the vehicle in park. QUEZADA-Montero claimed the vehicle belonged to his sister-in-law and the two minor children passengers were his nieces. CBP Officer Boswell asked QUEZADA-Montero to open the hood of the vehicle. When the hood was up, CBP Officer Boswell noticed the firewall area was blocked off. CBP Officer Boswell notified the Anti-Terrorism Contraband Enforcement Team (A-TCET) of his alert.

17. CBP Officer Lesvy Thomas was conducting A-TCET pre-primary roving operations and responded to CBP Officer Boswell's alert of the 2008 Chevrolet Malibu. After CBP Officer Thomas took a customs declaration, he asked QUEZADA-Montero where he was heading. QUEZADA-Montero stated he was taking his nieces to school then driving to San Fernando Valley to pick up his check.

CBP Officer Thomas asked QUEZADA-Montero where he works, QUEZADA-Montero claimed he previously worked construction but now does work on vehicles.

18. During questioning, QUEZADA-Montero asked CBP Officer Thomas not to be sent to secondary inspection. QUEZADA-Montero claimed the two minors in the vehicle would get frightened if referred to secondary inspection. QUEZADA-Montero subsequently turned around and looked at his niece sitting behind his seat, then looked forward. CBP Officer Thomas asked QUEZADA-Montero who was picking the two kids up at school. QUEZADA-Montero replied that the two kids would be staying at a friend's house, while at the same time, one of the kids claimed their mother was going to pick them up. CBP Officer Thomas referred the vehicle to secondary inspection.

19. CBP Officer Duangdow Ongsri operated the Z-Portal System and observed image anomalies in the firewall area of the vehicle. CBP Officer Ongsri notified CBP Officer Jose Jusino at the secondary inspection of his findings.

20. At approximately 6:00 a.m., CBP Officer Jusino further inspected the 2008 Chevrolet Malibu. CBP Officer Jusino opened the firewall and discovered numerous packages. CBP Officer Jusino removed a total of eight (8) packages from the firewall area of the vehicle. CBP Officer Jusino randomly selected and probed each package which field-tested positive for the indication of Methamphetamine, a Schedule II Controlled Substance. The total weight of the packages was approximately 4.82 kilograms (10.65 pounds).

21. I was notified of the event via Sector dispatch. I recovered **Target Device #1** from a property bin assigned to QUEZADA-MONTERO. **Target Device #1** was placed in the property bin of QUEZADA-MONTERO with other

personal property belonging to him, including Target Device #2 and keys to the Chevrolet Malibu. I showed **Target Device #1** to QUEZADA-MONTERO who confirmed that the phone was his. I further discussed Target Device #2, originally found in the same property bin as **Target Device #1**. QUEZADA-MONTERO confirmed his ownership of Target Device #2.

22. Based upon my experience and investigation in this case, I believe that QUEZADA-MONTERO is involved in a conspiracy to smuggle narcotics from Mexico into the United States. Based on my experience investigating smuggling of controlled substances, I believe that **Target Device #1** was used to coordinate the smuggling of methamphetamine from Mexico into California. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones, which could lead to other persons involved in smuggling activities.

23. Based upon my experience and training, consultation with other law enforcement officers experienced in controlled substance investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the smuggling activities of QUEZADA-MONTERO and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Device #1** and Target Device #2 described herein.

## SEARCH METHODOLOGY

24. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which

the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, the **Target Device #1** will be collected and subjected to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

27. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that QUEZADA-MONTERO used the **Target Device #1** to facilitate the offense of smuggling of controlled substances. The cellular telephone was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 952, 960 and 963.

28. Because the **Target Device #1** was seized during the investigation of QUEZADA-MONTERO'S smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by QUEZADA-MONTERO continues to exist on the **Target Device #1**. As stated above, I believe that the appropriate date range for this search is from January 19, 2019, up to and including April 19, 2019.

29. Therefore, I respectfully request that the Court issue a warrant authorizing me, and other federal law enforcement agents specially trained in digital evidence recovery, to search **Target Device #1,** as described in Attachment A-1, and seize the items listed in Attachment B-1, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief

_____
Michael Hensley
Special Agent
Homeland Security Investigations


Subscribed and sworn to before me this __24__ day of May 2019.

_____
The Honorable Linda Lopez
United States Magistrate Judge

12

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The property to be search in connection with an investigation of violations of Title 21, United States Code, Sections 952, 960, 963 is described below:

>Samsung cellular phone
>Model number: SM-J327T1
>IMEI: 354256/09/588248/6

>**(Target Device #1)**

**Target Device #1** is currently in the possession of Homeland Security Investigations located at 185 West F street San Diego, California 92101.

## ATTACHMENT B-1
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of January 19, 2019 up to and including April 19, 2019:

a.  tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

c.  tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

d.  tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963.

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.